[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11972
Non-Argument Calendar
_____

Agency No. A077-340-550


QIN LIN JIN,

                                                                    Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                                    Respondent

.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(December 9, 2015)

Before TJOFLAT, HULL and JILL PRYOR, Circuit Judges.

PER CURIAM:

Jin Qin Lin, a citizen of China, seeks review of the Board of Immigration Appeals's ("BIA") denial of her motion to reopen her removal proceedings. After review, we deny the petition for review.

## I.    BACKGROUND

In 2001, Lin arrived at Los Angeles airport without valid entry documents and applied for admission into the United States. Lin was placed in removal proceedings, where she conceded her removability as an immigrant not in possession of a valid entry document, pursuant to Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I). Lin filed an application for asylum and withholding of removal based on China's family planning policies. At a 2002 merits hearing, an Immigration Judge ("IJ") denied Lin all requested relief. In 2004, the BIA affirmed the IJ's decision.

Over ten years later, on December 23, 2014, Lin filed this motion to reopen with the BIA, along with a successive application for asylum alleging a new religious persecution claim. With respect to her religious persecution claim, Lin alleged that her father-in-law joined an underground family church in China. In August 2013, based on her father-in-law's influence, Lin began attending a Christian church in the United States and was baptized on November 5, 2014. On November 7, 2014, Lin's father-in-law and his fellow church members were arrested. After his release on November 11, Lin's father-in-law told her that the

2

police beat him and named him as a cult organization member.  Based on this information, Lin began to fear she would be persecuted for her religious beliefs if she were to return to China.

With respect to her motion to reopen, Lin argued that changed country conditions in China, namely an intensified crackdown on underground family churches, excused her untimely filing.  In support of her motion to reopen, Lin submitted: (1) documents and affidavits establishing her baptism, membership, and attendance at the River of Life Christian Church in Flushing, New York; (2) letters from her father-in-law and one of his fellow church members describing their arrest and detention and asserting that there is no religious freedom in China; (4) media articles from 2011 to 2014 describing the Chinese government's efforts to crackdown on unregistered house churches and their leaders to force them to join China's official patriotic church system; and (4) the Reports on International Freedom of China ("Religious Freedom Reports) for 2001, 2002, 2012 and 2013 and the Country Report on Human Rights Practices in China ("Human Rights Reports") for the same years.  Lin contended that these reports and her father-in-law's arrest were material evidence establishing changed country conditions in China and also established her prima facie eligibility for asylum.

The BIA denied Lin's motion to reopen as untimely, and denied her motion to file a successive asylum application because Lin was subject to a final order of

removal.  The BIA concluded that Lin's evidence did not demonstrate changed country conditions to excuse the 90-day filing deadline for motions to reopen.  The BIA found that the letters purportedly from Lin's father-in-law and his fellow church member were unreliable because they were not notarized, they appeared to have been prepared specifically for Lin's removal proceedings, and the authors were not subject to cross-examination and had not sworn to the veracity of their letters' contents.

As for the reports and other evidence relating to recent conditions in China, the BIA explained that the evidence showed that from the time of Lin's 2002 removal hearing, "the Chinese government has continued to restrict religious activity to institutions that are registered with the Chinese government, leaving some members of unregistered religious groups to suffer repression, including surveillance, harassment, forced closure of their church, and the detention of some of their members."  The BIA further concluded that there were no grounds present "to warrant reopening pursuant to the Board's sua sponte authority."

## II.  DISCUSSION

An alien's motion to reopen removal proceedings must "state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material."  INA § 240(c)(7)(A), (B); 8 U.S.C. § 1229a(c)(7)(A), (B).  Generally, a motion to reopen must "be filed within

4

90 days of the date of entry of a final administrative order of removal." INA § 240(c)(7)(C)(i); 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2).

However, the 90-day deadline does not apply if the motion to reopen is for the purpose of applying for asylum or withholding of removal "based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." See INA § 240(c)(7)(C)(ii); 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2 (c)(3)(ii). A change in personal circumstances, on the other hand, does not authorize the untimely filing of a motion to reopen. See Jiang v. U.S. Att'y Gen., 568 F.3d 1252, 1258 (11th Cir. 2009) (concluding that, while changed personal circumstances such as the birth of a child do not meet the standard for a motion to reopen, evidence of a recent increased campaign of forced sterilization in the alien's home village established changed country conditions).[1]

Here, the BIA did not abuse its discretion in denying Lin's motion to reopen. Lin does not dispute that her motion was filed outside the 90-day deadline, and the BIA was within its discretion to conclude that Lin's evidence failed to show changed conditions in China.

---

[1] We review the denial of a motion to reopen for abuse of discretion. Jiang, 568 F.3d at 1256. Our review is limited to determining whether the BIA exercised its discretion in an arbitrary or capricious manner. Id.

As an initial matter, the BIA did not abuse its discretion in finding that the letters from Lin's father-in-law and a fellow church member were unreliable. Contrary to Lin's claim, the BIA did not explicitly consider whether the authors of the letters were "interested" parties or discount the letters because they were unauthenticated. Rather, the BIA considered the circumstances surrounding the letters as a whole, including the fact that the letters were not notarized, they appeared to have been prepared specifically for Lin's removal proceedings (in fact, the two letters were substantively identical), the authors were not subject to cross-examination, and the authors had not sworn to the veracity of the letters' contents. Therefore, it was not arbitrary or capricious for the BIA to find that the letters had minimal probative value.

Nor did the BIA abuse its discretion in denying Lin's motion to reopen because she failed to establish materially changed country conditions. The evidence Lin submitted demonstrates that during the time period between her 2002 removal hearing and her 2014 motion to reopen, China has continued to repress, punish, and abuse members of unregistered family or house churches. In particular the 2001 and 2002 reports show that, even at the time of Lin's removal hearing, unregistered churches were destroyed, scrutinized, and repressed, and members of the church groups were punished through administrative processes, such as labor

6

camps.  The 2002 report also details arrests and physical abuse of church leaders and members.  Lin thus has not established materially changed conditions in 2014.

**PETITION DENIED.**